[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have brought suit against the defendants Mary Lou Powell and her attorney Mark Allen on an agreement for the sale of premises located in Bridgeport. Since the suit was instituted Mrs. Powell has passed on and her husband Theodore Powell as the executor of her estate has been substituted as a defendant and he represents himself as executor pro se. Mark Allen is named a defendant as the holder of an escrow account arranged between the parties. The complaint alleges a written agreement for a parcel of land located in Bridgeport at 105 Grover's Avenue to be purchased by the plaintiffs from the defendant; that structural defects were found prior to the contract being executed and the contract provided for the repairs. In the event of the failure to make repairs prior to closing of title an escrow account for the repairs was set up. In fact on January 30, 1984, at the closing of title, an escrow agreement was executed by the parties in which Attorney Allen was named escrow agent for the $6500 fund, pursuant to paragraph 25 of the contract of sale entered into on October 5, 1983. It is further alleged that thereafter the repairs were made by the buyer who demanded the escrow account; that the repairs totaled $8,436.67, which has not been delivered to them and in addition they suffered loss of rental income and were required to make utility payments in the amount of $900. The defendant denied all the allegations of the complaint, and by way of special defenses pleaded 1 accord and satisfaction, 2 estoppel, 3 laches, 4 release, 5 Statute of Frauds, 6 Statute of Limitations, 7 waiver. By way of Cross Complaint the defendant Powell claimed that the contractor hired by the defendant was interrupted from completing the work and that prior to the closing the defendant delivered de facto possession to the plaintiff. She claimed that the plaintiffs violated the escrow agreement, that she was required to pay 2200 in mortgage and interest payments and requested delivery of the escrow fund and compensatory damages of $17,700.
The court finds the facts to be that the parties did enter into a contract on October 10, 1983 for the plaintiffs to purchase the defendant's real property for $158,500.00, subject to structural inspection. Thereafter a structural report was filed by a building inspection company and a part of their report notes: wet rot to the front right and left center posts CT Page 3822 and to the base of the fascia board across the front of the house, recommended replacement thereof, that the sill plate located in the front of the house was wet rotted, four floor joists were deteriorated so that they were inadequate to support the structure above them and recommended repair of the sill plate and the affected floor joists. Thereafter a contractor Frasca was hired by the defendant to make repairs to the sill and fascia as necessary across the front of the house, to the right and left front corners and areas in between as they may occur; to repair and/or replace four floor joists all at a maximum cost of $2,500.00." Subsequently Frasca began the work and replaced three or four floor joists, the sills, sill plate and fascia on the front of the house. He found dry rot the freize board, sill and three other areas including one stud. He agreed he was hired by Powell to repair and replace the joists, the sills, clapboards and freize over the front of the house as needed. He began the work in November 1983 and while proceeding with the job he was stopped by Mr. Catir and told he was doing it badly. He had completed nine man hours by then and estimated he would complete the job in another twenty-four man hours. By agreement of the parties his bill for work done in the amount of $315.00 was paid from the escrow account. Thereafter much discussion occurred between the plaintiffs and the defendants' attorney with respect to the repairs, the defendants were now living in California. However a closing of title of the premises did occur on January 30, 1984 with a paragraph 25 drawn by the defendants' New York attorney which reads as follows. "Seller acknowledges the Buyers' engineer's report indicate structural repairs or replacement as needed as to the sole plate and floor joists. Seller agrees to make such repairs as are necessary at an approximate cost of $6,500.00. In the event such repairs are not completed by the time title is closed, sufficient funds to pay for such repairs shall be held in escrow until the work is completed to satisfaction of Buyer's engineer. Seller will produce a certificate of occupancy or letter from the appropriate municipal department indicating a certificate of occupancy is not required at or before closing of title." At the closing an "Escrow Agreement" was executed, by the attorneys for the parties, the pertinent part of which reads "Mark D. Allen of 992 Danbury Road, P.O. Box 205, Georgetown, CT 06829 shall act as escrow agent and shall hold $6,500 in escrow pursuant to paragraph 25 of a Contract of Sale entered into Oct. 3, 1983 between the Seller and purchaser."
The issue in this case is the interpretation of paragraph 25 of the contract and the extent of the repairs to be paid from the escrow account. The plaintiffs' inspection report states "2 there is wet rot noted to both the left and right front corner posts of the house and to the base of the fascia CT Page 3823 board located across the front of the house. Replacement of the affected section is recommended" "7 As viewed from the Basement area it is noted that the sill plate located in the front of the house has wet rotted. It is further noted that approximately 4 floor joists are deteriorated to the point of being inadequate forms of support. Repair to the sill plate and affected floor joists is recommended." Paragraph 25 drawn by the plaintiffs' attorney limits the structural repairs or replacement needed to the sole plate at the front of the house and floor joists. The escrow agreement refers to paragraph 25 and states that the $6500 is held pursuant to that paragraph. This court finds that the interpretation of paragraph 25, the escrow agreement and the inspection report leads to the conclusion that the money held in escrow was to pay for repairs and replacement to the front of the house and four floor joists, and only to that portion of the house.
The court further finds that Frasca's work was inadequate to repair the noted conditions, and that he was performing as little repairs and replacements as possible a "patch up job" and that the plaintiffs were correct to stop him. Thereafter with the defendants in California, nothing was being accomplished to effect the repairs to the house and the plaintiffs actions in securing their own contractor to do the work. Langston Construction Services, Inc. (Langston) completed the work at a total cost of $7,542.72. A great portion of the Langston work was done on the rear and sides of the house and were required to put the house in good condition. However the escrow account with which this court is concerned limits the repairs to the inspection report which describes the necessary work as being located in the front of the house and to four floor joists. Repairs to the sides and rear of the house while warranted are not recoverable from the escrow fund. Any reliance of the plaintiffs on the real estate agents representations or statement is unwarranted since there is no evidence before the court to indicate that the agent had authority to make the statements and representations. In addition when the plaintiffs closed title on January 30, 1984 they were in possession of their experts report (MacAninch) of the extent of the damage. It is apparent to the court that all experts did agree that major portion of the work was to the front of the house, and consequently the greater portion of the all the repairs was to that area. Langston's bill for repairs and replacement of $7,542.72 is found to be a reasonable charge, however, as has been previously pointed out the escrow account is liable for only the repairs specified therein to the front of the house and the four floor joists. The plaintiffs claims under the complaint are mainly directed to the escrow account. Their claim for loss of rentals and utility payments is denied since they have not proved those damages by a CT Page 3824 preponderance of the evidence. The defendants claim for damages for mortgage and interest payments in their cross complaint is denied since they agreed to the extensions of the closing, by closing waived any claim for the damages they are making up to that date January 30, 1984 and delayed the making of repairs for the period it took to make them. The special defenses of the defendant 1 through 7 have not been proven by a preponderance of the evidence.
The value of the Langston repairs and replacements to the front of the house and the four joints is found to be $4,500 which Attorney Mark Allen shall pay to the plaintiffs herein. The balance of the fund which was $9,348.88 shall be paid to the defendants. Any fees due Attorney Allen as escrowee shall be paid from the defendants' share, and any increment to the escrow account above the stated figures shall be paid to the defendants. No interest is awarded to either party however the plaintiffs are awarded court costs which shall be paid from the defendants share of the escrow fund.
Judgment shall enter in accordance with the foregoing.
LEVINE, STATE TRIAL REFEREE